# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

EDDIEL ACOSTA DIAZ LA SERNA,[1]

  Petitioner

v.

TODD BLANCHE,[2] et al.,

  Respondents

Case No.: 2:26-cv-00238-APG-DJA

**Order (1) Granting in Part Petition for Habeas Corpus and (2) Setting Deadline for Supplemental Briefs**

[ECF No. 12]

Petitioner Eddiel Acosta Diaz La Serna filed this petition for writ of habeas corpus challenging his continued detention by Immigration and Customs Enforcement (ICE). He is a citizen of Cuba who arrived in the United States in November 2024 and applied for admission. ECF Nos. 13-1 at 2; 20-1 at 2, 7. He was served with a notice to appear as an arriving inadmissible alien and given humanitarian parole[3] into the United States with an "Admit Until Date" of November 6, 2026. ECF Nos. 13-1 at 2; 13-4 at 2. In December 2024, an Immigration Judge (IJ) granted La Serna's unopposed motion to terminate his removal proceedings. ECF No. 13-2 at 2. According to the petition, La Serna obtained employment authorization and a social

---

[1] In his amended petition, petitioner states that his correct name is Eddiel Acosta Diaz La Serna. ECF No. 12 at 4 n.5. I therefore direct the clerk of court to correct the caption.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

[3] La Serna characterizes his release into the United States as humanitarian parole under § 212(d)(5) of the INA (8 U.S.C. § 1182(d)(5)). La Serna's Form I-94 states his "Class of Admission" is "DT." ECF No. 13-1. The government does not dispute that "DT" on La Serna's form means he was granted humanitarian parole under § 1182(d)(5). *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025) ("Here, the parole status conferred upon Petitioner was identified as 'DT,' which the parties acknowledged at the oral argument hearing described a 'humanitarian' parole.").

security number, secured employment operating heavy machinery in a mining operation, and resided with his mother, who is a lawful resident. ECF No. 12 at 5.

On some unknown date, his "Admit Until Date" was changed to April 18, 2025.[4] ECF No. 13-3 at 2. La Serna asserts that he never received notice and an opportunity to be heard on this change. The government presents no evidence or argument that La Serna was given notice and an opportunity to be heard.

In November 2025, La Serna pleaded guilty to attempted battery with substantial bodily harm (a felony) and battery constituting domestic violence (a misdemeanor). ECF No. 13-5 at 2. The prosecution indicated it was not opposed to La Serna being sentenced to probation on the felony count and time served for the other count. *Id.* at 2-3. Additionally, the plea agreement allowed La Serna to withdraw his plea and plead guilty to only the misdemeanor domestic violence battery count if he successfully completed probation. *Id.* at 3. However, according to La Serna's counsel in the criminal case, La Serna has not been sentenced yet "because he was placed in immigration custody upon his release from the Clark County Detention Center, and therefore was not present at sentencing." ECF No. 13-6 at 2.

On November 21, 2025, the Department of Homeland Security (DHS) took Diaz into custody and issued a second notice to appear. ECF No. 20-1 at 2-3, 7. La Serna appeared before

---

[4] On March 25, 2025, DHS issued a notice that it was "terminating" certain parole programs, including a program for Cubans. *See* Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13611 (Mar. 25, 2025). That notice stated that the temporary parole period for those in the impacted programs "whose parole has not already expired by April 24, 2025 will terminate on that date unless the Secretary makes an individual determination to the contrary." *Id.* Thus, it does not explain La Serna's new "Admit Until Date" of April 18. Additionally, the government did not respond to La Serna's arguments, so it does not assert that this notice is the basis for La Serna's parole being revoked.

2

an IJ in January, February, and March 2026, and an IJ granted him withholding of removal on March 27. ECF Nos. 12 at 6; 21 at 3.  He has remained in ICE custody since November 21.

La Serna filed this petition to challenge his continued detention.  First, he asserts that the government violated his Fifth Amendment due process right by reducing the length of his humanitarian parole without notice, an opportunity to be heard, and an individualized revocation determination.  Second, he contends that the government violated the Administrative Procedure Act (APA) by not following its § 1182(d)(5)(A) and its implementing regulation, 8 C.F.R. § 212.5(e), by not giving written notice and an explanation of the basis for revoking parole under one of the statutory grounds.  He requests relief that I (1) declare the government violated the due process clause and the APA by shortening or terminating his humanitarian parole without complying with regulatory and constitutional requirements; (2) order the government to provide him with notice and a meaningful opportunity to be heard on the proposed termination of his humanitarian parole; and (3) enjoin the government from "re-determining [his] custody or revoking humanitarian parole except through an individualized process consistent with governing regulations and due process." ECF No. 12 at 13-14.  La Serna alternatively requests that if I "decline[] to order release pending that process," then I should require the government "to provide a prompt, individualized custody determination." *Id.* at 14.

In response, the government does not address the humanitarian parole and related due process and APA allegations.  Instead, the government "interpret[s] the basis for the Petitioner's writ is rooted in the distinction between 8 USC § 1225 and § 1226(a) framework." ECF No. 20 at 1.  The government then asserts that La Serna is properly detained and ineligible for bond during his removal proceeding under § 1225(b) and *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025).

The government argues that La Serna should first have to pursue custody redetermination before the IJ, so the petition is not ripe.

The government cites no legal authority in support of its argument that La Serna's petition is not ripe. *See* ECF No. 20 at 2.  La Serna is suffering an injury in fact due to his current detention, so his petition is ripe under Article III. *See Galvan v. Hermosillo*, No. 2:25-cv-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025) (finding the noncitizen detainee's habeas petition was ripe even though an IJ had not yet determined his eligibility for bond).  To the extent the government is arguing for administrative or prudential exhaustion, it has not cited any law nor applied the law to the facts of this case.  I decline to consider this undeveloped argument.  Consequently, I consider the petition.

The government has not disputed La Serna's factual assertion that the change to his "Admit Until Date" was done without notice and an opportunity to be heard; nor has it opposed his legal arguments that this violates due process and the APA.  La Serna's arguments are valid, so I grant that portion of his petition as unopposed.  Accordingly, I set aside the April 18 "Admit Until Date" and reinstate La Serna's "Admit Until Date" as November 6, 2026, subject to the government changing the date if it provides La Serna notice and an opportunity to be heard and otherwise complies with all statutory and regulatory requirements to change the date.

In terms of releasing La Serna from custody, I need more information before doing so. The parties have represented that an IJ granted La Serna withholding from removal on March 27, 2026. ECF No. 20 at 7.  Now that the time to appeal has passed, the parties must address whether anyone appealed the IJ's ruling and how the appeal or lack of appeal impacts under what legal authority he is detained and whether he will obtain an individualized custody hearing.

4

The government asserts he is properly detained under § 1225, but the government's position is difficult to understand even under its own argument.  The government cites to § 1225(b)(1)(A)(iii)(II), which it states covers noncitizens who "have not been admitted or paroled . . . ." ECF No. 20 at 2; *see also* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States . . . ."). But La Serna was paroled, and just a few sentences later in its brief, the government admits as much. ECF No. 20 at 2 (stating that La Serna "was issued a Notice to appear and paroled into the United States").  The government later argues that § 1225(b)(2)(A) mandates La Serna's detention because he is an "applicant for admission," but I have rejected that blanket application of § 1225(b)(2)(A) to all noncitizens detained within the country. *Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2-4 (D. Nev. Apr. 1, 2026).

The government also contends that *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) governs his detention.  In *Q. Li*, the Board of Immigration Appeals affirmed the detention of a noncitizen under § 1225(b)(2)(A) after the noncitizen's humanitarian parole under § 1182(d)(5)(A) was revoked.  Under § 1182(d)(5)(A), when parole is revoked, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  If the government's position is that under this section, La Serna was effectively returned to the border and § 1225 applies, it did not address La Serna's argument that the parole was revoked in violation of due process and the APA.

It is unclear from La Serna's brief what statutory section (if any) he believes governs his detention and the availability of a bond hearing. *See Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) ("Four statutes grant the Government authority to detain noncitizens who have been

5

placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).  A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." (simplified)); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 945-48 (9th Cir. 2008) (determining which provision of the INA governs the noncitizen's detention before determining habeas relief), *abrogation on other grounds recognized by Avilez*, 69 F.4th at 535.  I therefore direct the parties to provide me with updates on La Serna's immigration proceedings and to address the relief that I should grant related to his due process and APA claims as it pertains to his detention.

I THEREFORE ORDER the clerk of court to correct the petitioner's name on the case caption to Eddiel Acosta Diaz La Serna.

I FURTHER ORDER that petitioner Eddiel Acosta Diaz La Serna's amended petition for writ of habeas corpus **(ECF No. 12) is GRANTED in part**.  By not opposing, the government has conceded that the change to La Serna's "Admit Until Date" was done in violation of due process and was final agency action that was done "without observance of procedure required by law" under the APA, 5 U.S.C. § 706(2)(D).  I therefore set aside the April 18 date and reinstate petitioner Eddiel Acosta Diaz La Serna's "Admit Until Date" to November 6, 2026.  This reinstatement is without prejudice to the government changing the date after complying with any applicable constitutional, statutory, and regulatory requirements.

I FURTHER ORDER that by **Thursday, April 27, 2026 at 12:00 p.m. PDT**, the parties must file supplemental briefs of no more than five pages each addressing the following:

1. Whether any party appealed the IJ's grant of withholding of removal and, if so, how that impacts what statutes apply to La Serna's detention and the availability of an individualized bond hearing.

2. If no party appealed, what statutes apply to La Serna's detention and the availability of an individualized bond hearing.

3. Whether La Serna has ever had an individualized bond hearing and, if so, the results.

4. What relief is appropriate at this stage regarding La Serna's detention.

This is not an opportunity for the respondents to reargue La Serna's due process and APA arguments.

DATED this 28th day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

7