**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EDDIEL ACOSTA DIAZ LA SERNA,

Petitioner

v.

JOHN MATTOS, et al.,

Respondents

Case No.: 2:26-cv-00238-APG-DJA

**Order Granting in Part Second Amended Petition**

[ECF No. 29]

Petitioner Eddiel Acosta Diaz La Serna filed a petition for writ of habeas corpus challenging his continued detention by Immigration and Customs Enforcement (ICE). He is a citizen of Cuba who arrived in the United States in November 2024 and applied for admission. ECF Nos. 13-1 at 2; 20-1 at 7. He was served with a notice to appear as an arriving inadmissible alien and given humanitarian parole into the United States with an "Admit Until Date" of November 6, 2026. ECF Nos. 13-1 at 2; 13-4 at 2. In December 2024, an immigration judge (IJ) granted La Serna's unopposed motion to terminate his removal proceedings. ECF No. 13-2 at 2. La Serna obtained employment authorization and a social security number, secured employment operating heavy machinery in a mining operation, and resided with his mother, who is a lawful resident. ECF No. 12 at 5.

On some unknown date, his "Admit Until Date" was changed to April 18, 2025. ECF No. 13-3 at 2. La Serna asserted that he never received notice and an opportunity to be heard on this change. Because the government presented no evidence or argument that La Serna was given notice and an opportunity to be heard, I previously concluded this violated due process and the Administrative Procedure Act (APA), granted his petition in part, and reinstated the November 2026 parole end date. ECF No. 22 at 6. I also stated that the "reinstatement is without prejudice

to the government changing the date after complying with any applicable constitutional, statutory, and regulatory requirements." *Id.* Because La Serna was in removal proceedings through which he obtained withholding of removal to Cuba, I ordered the parties to submit supplemental briefs regarding the status of his removal proceedings and how those may impact the authority under which La Serna was detained, as well as the appropriate relief to address the due process and APA violations. *Id.* at 6-7.

Neither party appealed the IJ's decision that La Serna was removable to Cuba and granting him withholding of removal. ECF Nos. 23 at 1; 24 at 1-2. The government argued that this made La Serna's removal order final, so his detention is governed by 8 U.S.C. § 1231, which requires detention during the initial 90-day removal period. The government asserted that although it cannot remove La Serna to Cuba, it can remove him to a third country, so he should remain in custody during the removal period. The government contended that because La Serna's habeas corpus petition was aimed at his detention during his removal proceedings, and those proceedings concluded, the first amended petition was moot. It also asserted that he has no avenue for release during the removal period unless and until he is subjected to prolonged detention, at which point he can proceed under the framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Additionally, the government asserted that La Serna has not requested a custody redetermination before an IJ.

La Serna agreed that the removal order is now final. But he contended that because I reinstated his humanitarian parole "Admit Until Date" to November 2026, his parole was restored, and he should be released until the government complies with the sequential requirements of first revoking parole and then executing a removal order. La Serna argued that the proper remedy for the government violating his due process rights was to return to the status

quo before that violation, which was release under the conditions of humanitarian parole. He contended that a bond hearing would not adequately vindicate his rights because, contrary to the government's representation, he already requested a custody determination before the IJ, which the IJ denied based on an asserted lack of jurisdiction to consider that request. La Serna also requested leave to amend his petition to address his ongoing detention and any proposed third-country removal.

On April 29, 2026,ICE served La Serna with a notice of its intent to remove him to Mexico. ECF No. 31-1 at 13. La Serna refused to sign the notice. *Id.* On May 11, ICE served La Serna with a Notice of Failure to Comply under 8 C.F.R. § 241.1(g). *Id.* at 21. The notice stated that La Serna's custody status had been reviewed and ICE determined that he would not be released from custody because he had been advised on May 6, 2026 that he was required to assist with obtaining travel documents, that ICE attempted to serve him with the April notice of third country removal but he refused to sign, so he would remain detained until he demonstrated reasonable efforts to comply with the removal order. *Id.* The notice also asserted that La Serna "refused to speak to ICE officers about a Third Country Removal even when [his] removal order states to pick a third country." *Id.* The notice advised La Serna that he would "remain in ICE custody until [he] demonstrate[s] that [he] is making reasonable efforts to comply with the order of removal and that [he] is cooperating with ICE's efforts to remove [him]." *Id.* Finally, the notice advised him that "continued willful failure or refusal on [his] part to make timely application in good faith for travel or other documents necessary for [his] departure, or any conspiracy or actions to prevent [his] removal or obstruct the issuance of a travel document, may subject [him] to criminal prosecution under 8 USC Section 1253(a)." *Id.* ICE subsequently

served La Serna with two more notices of intent to remove him to Mexico, which La Serna again refused to sign. *Id.* at 10-11.

On May 13, I issued an order stating that I was inclined to rule that La Serna was properly detained under § 1231(a) because his removal proceedings were final and he was in the 90-day removal period that mandates detention. ECF No. 26 at 3 (citing 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(i), (2)(A)). I preliminarily concluded that service of a second notice to appear constituted written termination of parole under § 212.5(e)(2)(i). *Id.* at 4. I concluded that "the due process and APA violations are divorced from the reason that La Serna is currently in custody" because he was issued a new notice to appear and is now subject to a final order of removal. *Id.* at 3-4. But because I raised issues relating to the notice to appear for the first time, I granted La Serna leave to file a supplemental brief. *Id.* at 4-5.

I further concluded that because La Serna was still in the initial 90-day removal period, his detention was mandatory at that time. *Id.* at 5. The fact that La Serna "was granted withholding of removal does not preclude the possibility that he could be removed to a third country." *Id.* (citing 8 U.S.C. § 1231(b); 8 C.F.R. § 208.16(f)). I found it was "premature to conclude on the record before me that there is no significant likelihood of his removal to a third country in the reasonably foreseeable future." *Id.* But I granted La Serna leave to amend his petition if he had grounds to do so. *Id.*

The parties filed supplemental briefs regarding whether La Serna's parole was properly revoked via the second notice to appear. ECF Nos. 27; 28. Additionally, La Serna filed a second amended petition raising six grounds for relief. ECF No. 29. In grounds one and two, La Serna asserts the respondents violated due process, 8 C.F.R. § 212.5(e)(2)(i), and the APA by revoking his parole without notice and an opportunity to be heard. Ground three asserts that the

respondents cannot remove La Serna to a third country without giving him notice and an opportunity to raise fear-based protection against removal to that third country. Relatedly, ground four asserts that the respondents cannot detain him solely for the purpose of effectuating a third country removal without providing him the necessary procedures to contest that removal. Fifth, La Serna argues that ICE has violated its own regulations, and thus violated the APA, because ICE has not conducted a proper custody review following his final order of removal. La Serna contends that the Notice of Failure to Comply cannot support his continued detention. Finally, La Serna argues that even if he is detained under § 1231, there is no significant likelihood of his removal in the reasonably foreseeable future, so he should be released under *Zadvydas*.

The government asserts that I lack jurisdiction to consider La Serna's amended petition. Alternatively, it argues that claims one and two are moot because La Serna's detention is governed by § 1231 and he was subject to mandatory detention during the initial 90-day removal period. It argues the removal period did not start until La Serna was returned to ICE custody in June 2026 following a sentencing hearing in state court. It also contends that even if the removal period started earlier, it was properly extended because La Serna prevented his removal by not agreeing to go to Mexico despite not expressing a fear of being removed there. And it contends that even if the initial removal period has expired, his continued detention is presumptively reasonable under *Zadvydas* because six months have not passed since his order of removal became final and there is a significant likelihood of removal to Mexico because La Serna has not expressed a fear of persecution or torture if removed to Mexico. The government argues that La Serna has no right to refuse removal absent a credible fear claim. Rather, it asserts, a noncitizen has an affirmative duty to assist in his own removal.

La Serna replies that I have jurisdiction because he does not seek review of his final order of removal; rather he challenges his continued detention and the respondents' failure to provide due process in relation to a third country removal. He also disputes that his brief return to state custody for sentencing restarted the initial removal period.

**I. Petition for Writ of Habeas Corpus**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).

**II. I have jurisdiction to review La Serna's second amended petition.**

The Ninth Circuit has concluded that § 1252(g) and (b)(9) do not strip courts of jurisdiction where a petitioner "objects to the lack of process afforded him in connection with having been sent to a country not designated in the IJ's removal order, despite his vehement and

repeated objections that he feared being sent there." *Ibarra-Perez v. United States*, 154 F.4th 989, 999-1000 (9th Cir. 2025). The Ninth Circuit reasoned that § 1252(g) did not bar review because the petitioner did "not challenge ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order." *Id.* at 997. It also concluded that "§ 1252(b)(9) does not apply because [the petitioner] brings claims that arose after completion of his removal proceedings." *Id.* at 1000.

The same is true here. La Serna does not seek review of his removal order,[1] and he does not challenge ICE's authority to decide when or whether to execute a removal order. His claims relate to ICE's efforts to remove him to a third country after the completion of his removal proceedings before the immigration judge, and he challenges the constitutionality of his continued detention. I therefore have jurisdiction to consider his claims. *See Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *1 (D. Nev. Feb. 2, 2026). *See also Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2 (D. Nev. Apr. 1, 2026) (rejecting similar jurisdictional arguments under §§ 1252(g) and (b)(9) in the context of detention under § 1226).

**III. La Serna is detained under § 1231, so his claims related to due process and APA violations before his final order of removal are moot in the context of a habeas petition.**

Grounds one and two of La Serna's petition are moot because they challenge his detention while his removal proceedings were ongoing. Once his removal order became final, he was detained under § 1231. That section mandates detention for the initial 90-day removal

[1] To the extent La Serna's argument that respondents must proceed sequentially to properly revoke parole before commencing removal proceedings could be understood to challenge his final order of removal, I would lack jurisdiction to resolve that claim. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g). La Serna concedes he is not challenging his final removal order. ECF No. 33 at 2.

period regardless of whether parole was previously granted. 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). Thus, even if La Serna's parole was improperly revoked, his detention became mandatory upon the removal order becoming final. Consequently, I deny grounds one and two and the related supplemental briefing as moot in the context of his habeas petition.

Section § 1231 provides for the possibility of release on supervision following the initial 90-day removal period. *Id.* § 1231(a)(3). And under 8 C.F.R. § 212.5(e)(2)(i), if ICE cannot execute the final removal order "within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." I address whether ICE has complied with its own regulations and whether removal is significantly likely in the reasonably foreseeable future with respect to La Serna's other claims.

**IV. La Serna has not met shown that he made a fear-based objection to being removed to Mexico, but I grant his petition in part to require ICE to provide him with proper notice and an opportunity for a hearing in front of an IJ if he moves to reopen his proceedings to present a fear-based objection to removal to Mexico or any other third country the government designates.**

Grounds three and four of the petition assert that due process requires ICE to provide him with notice and an opportunity to raise a fear-based objection to removal to a third country. He states in his petition "[o]n information and belief," he "objected to removal to Mexico." ECF No. 29 at 18. La Serna asserts that Mexico will not accept non-Mexican citizens who do not voluntarily agree to be removed to Mexico. He also argues that his refusal to sign the notice of intent to remove him to Mexico cannot be characterized as a failure to comply with his obligations to assist in his removal because the respondents have not given him the required

process to assert fear-based claims. He requests an order that the respondents "may not remove Petitioner to Mexico or any third country unless and until they provide meaningful notice and a meaningful opportunity to seek fear-based protection before an immigration judge." *Id.*

The government responds that La Serna has not made a fear-based objection, that he simply refused removal, and that he has a legal duty to cooperate in his own removal. It thus contends that he is still properly detained under the initial removal period because it has been extended under § 1231(a)(1)(C) through his failure to cooperate.

La Serna has not met his burden to show that he expressed a fear-based objection to removal to Mexico. He states in his petition and reply brief that, on information and belief, he did so. ECF Nos. 29 at 7; 33 at 7. But La Serna would know if he made a fear-based objection, and neither his petition nor his reply brief has a supporting affidavit to show he made a fear-based objection. La Serna argues that the respondents "fail to support" their allegation that he has not claimed fear of Mexico "with a citation to any evidence or record," but La Serna likewise cites no evidence to support his assertion that he expressed a fear of removal to Mexico. ECF No. 33 at 7.

Although La Serna has not shown he expressed fear of removal to Mexico, I grant his petition in part because while ICE can remove a noncitizen to a third country, it must comply with § 1231 and due process to do so. If DHS cannot remove the noncitizen to a country specified by the IJ's removal order, DHS may remove the alien to any other country that qualifies under § 1231(b). *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) ("DHS retains the authority to remove the alien to any other country authorized by the statute."); 8 C.F.R. §§ 1240.12(d), 241.15, 208.16(f), 1208.16(f). However, under 8 U.S.C. § 1231(b)(3)(A), DHS "may not remove an alien to a country if the Attorney General decides that the alien's life or

freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." DHS thus must "notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported; otherwise, DHS violates their constitutional right to due process." *Ibarra-Perez*, 154 F.4th at 995 (quotation omitted); *see also Perez Canet v. Blanche*, No. 2:26-CV-00223-APG-NJK, 2026 WL 1091763, at *4 (D. Nev. Apr. 22, 2026) (agreeing with other courts that "the government must comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated" and collecting cases).

Here, the notices of intent to remove La Serna to Mexico did not advise him that he had a right to apply for asylum or withholding of removal to Mexico. ECF No. 31-1 at 10, 11, 13. There is no evidence ICE otherwise notified La Serna of these rights. Because ICE did not comply with due process in its attempt to remove La Serna to Mexico, it cannot rely on his refusal to go to Mexico as a basis to extend the removal period under § 1231(a)(1)(C). *Perez Canet*, 2026 WL 1091763, at *5. I therefore grant grounds three and four of the second amended petition.

The remedy for this violation is for the government to provide La Serna with the requisite notice and an opportunity to be heard. If the government intends to remove La Serna to Mexico or any other third country, it must provide him with "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019). Additionally, it must ask La Serna whether he fears persecution or harm upon removal to the third country, and his response must be memorialized in a writing signed by La Serna. *Id.* "If [La Serna] expresses

a fear of persecution or harm, DHS must inform [him] that he . . . may seek asylum, withholding, and relief under the [Convention Against Torture (CAT)] by filing a motion to reopen with the immigration courts." *Id.* Finally, the government must give La Serna "adequate time to prepare and file a motion to reopen in order to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT." *Id.* at 1020; *see also A.A.M.*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) (concluding the petitioner was likely to succeed on the merits because "due process requires Petitioner be provided an opportunity to have his fear-based claims for removal to [a third country] considered by an immigration judge").

**V. The government has not complied with its own regulation to provide a custody determination post-removal order, and it cannot rely on an extension of the initial removal period.**

In ground five of his second amended petition, La Serna argues that ICE violated the APA by not following its own regulation because it did not provide him with an individualized custody determination after the initial 90-day removal period expired. He argues the government cannot rely on the Notice of Failure to Comply to extend the removal period because the government violated his due process rights in relation to the attempted removal to Mexico. Finally, he asserts that the government cannot restart the 90-day removal period once it has started by briefly returning him to state custody and then restarting it anew when he returned to ICE custody.

The government argues that the 90-day removal period runs from the date La Serna was returned to ICE custody on June 12, 2026 because under § 1231(a)(1)(B)(iii), the removal period begins on the date La Serna was released from state custody. It also argues that his refusal to cooperate in his own removal extended the removal period under § 1231(a)(1)(C).

Under the APA, I may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). I also may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity," or "without observance of procedure required by law." *Id.* § 706(2)(B), (D).

*1. The removal period began on April 27, 2026, when the removal order became final while La Serna was in ICE custody.*

Section 1231(a)(1)(B) states that the removal period "begins on the latest of" certain events. The parties dispute which of two potential events applies in this case. La Serna argues that the applicable provision is § 1231(a)(1)(B)(i), which states that the removal period begins the "date the order of removal becomes administratively final." The government contends that § 1231(a)(1)(B)(iii) applies, which states that the removal period begins "the date the alien is released from detention or confinement" if the noncitizen "is detained or confined (except under an immigration process)." The government relies on this provision because La Serna was briefly returned to state custody for sentencing after the removal order became administratively final.

La Serna's removal period began on April 27, 2026, when his removal order became administratively final. On that date, he was in immigration-related custody. The government cites no authority for the proposition that the removal period restarts anew if the detainee was in ICE custody when the removal order became administratively final but is then temporarily transferred to state custody and subsequently returned to ICE custody. The statute addresses when the removal period can be suspended, and that does not include a provision for when the

noncitizen is temporarily transferred to state custody after the removal period has already begun. *See* 8 U.S.C. § 1231(a)(1)(C).[2]

Restarting the removal period in this case appears to be particularly unwarranted because La Serna missed his state court sentencing due to being in ICE custody. ECF No. 30-6. That caused the state court to issue a bench warrant that resulted in ICE returning him briefly to state custody. ECF No. 30-7. ICE could have waited until La Serna's state proceedings had concluded before taking him into custody and adjudicating his removal. It thus controlled the timing of events. If it did not want to lose part of the 90-day initial removal period to time spent in state custody for a sentencing hearing, it could have waited until the state proceedings had concluded to issue the notice to appear and take La Serna into custody. Even if the removal period could be tolled for the time La Serna was in state custody, the initial 90-day period has now expired.

/ / / /

/ / / /

/ / / /

---

[2] Although the government does not cite any authority in support of its position, I note that the Ninth Circuit has concluded that a detainee's obstruction under § 1231(a)(1)(C) can result in the removal period being started anew after the period of obstructionism ends. *See Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). The Ninth Circuit stated that the "purpose of the 90-day period is to afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal. Using a single 90-day clock prior to and following a lengthy period of obstruction would, in many cases, frustrate that purpose by substantially truncating the amount of time within which the removal arrangements must be made." *Id.* (simplified). That decision was grounded in the statutory provision for suspending the initial removal period due to obstruction. No similar statutory provision exists for suspending the removal period during a transfer to state custody after the removal order becomes administratively final. Moreover, the government has presented no evidence that the temporary transfer to state custody for a sentencing hearing in this case frustrated its ability to make travel, consular, or other administrative arrangements to secure La Serna's removal. And as discussed, the timing issues were within ICE's control, as opposed to the situation in *Diouf*.

*2. The government cannot rely on § 1231(a)(1)(C) to extend the removal period because it violated La Serna's due process rights.*

Under § 1231(a)(1)(C), the "removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." The government provided La Serna with a Notice of Failure to Comply invoking this provision. ECF No. 30-10. However, as discussed above, the government violated La Serna's due process rights in its attempt to remove him to Mexico without providing adequate notice and opportunity to be heard. Consequently, the government cannot rely on § 1231(a)(1)(C) to extend the removal period's mandatory detention.

*3. Because the initial removal period is over, the government must provide La Serna with a custody review under 8 C.F.R. § 241.4.*

The initial removal period is over. Under 8 C.F.R. § 241.4(k)(1)(i), "[p]rior to the expiration of the removal period, the district director or Director of the Detention and Removal Field Office shall conduct a custody review for an alien described in paragraphs (a) and (b)(1) of this section where the alien's removal, while proper, cannot be accomplished during the period, or is impracticable or contrary to the public interest." ICE must "notify the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status." 8 C.F.R. § 241.4(k)(1)(i). The regulation sets forth the relevant factors for detention review. *Id.* §§ 241.4(e)-(f).

Instead of conducting a custody review, ICE issued the Notice of Failure to Comply denying release because La Serna refused to sign the notice of intent to remove him to Mexico

and "refused to speak to ICE officers about a Third Country Removal even when [his] removal order states to pick a third country." ECF No. 31-1 at 21. But as discussed above, La Serna's refusal cannot be used as a basis to extend the removal period because ICE violated his due process rights in relation to third country removal.

If ICE wants to remove La Serna to a third country, it must afford him due process. Because ICE has not yet done so, it cannot rely on his refusal to agree to removal to Mexico or any other third country as a basis to extend the removal period. The initial removal period has expired, so ICE must conduct a custody review consistent with § 241.4, and ICE cannot rely on § 1231(a)(1)(C) to extend the removal period and deny him release until it has afforded him due process related to a third country removal. I therefore grant ground five of the second amended petition and order ICE to provide La Serna with a custody review under § 241.4 that does not rely on § 241.4(g) to deny release unless and until ICE affords him due process.

**VI. I deny without prejudice La Serna's *Zadvydas* claim.**

Ground six of the second amended petition asserts a *Zadvydas* claim that there is no significant likelihood of removal in the reasonably foreseeable future because La Serna cannot be removed to Cuba and because his removal to Mexico or any other third country is not likely. The government responds that this claim is premature because La Serna is still within the 90-day mandatory detention period, or alternatively, he is still within the presumptively reasonable six-month period to effectuate his removal. The government argues that if La Serna would cease obstructing his removal to Mexico, his removal would be accomplished in the reasonably foreseeable future.

The Attorney General has discretion to detain noncitizens beyond the initial 90-day removal period under 8 U.S.C. § 1231(a)(6). However, to avoid doubt about the statute's

constitutionality, the Supreme Court in *Zadvydas* read into the statute an "implicit limitation" on that discretion because a statute that permitted indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment's due process clause. 533 U.S. at 682, 689-90. The Supreme Court adopted a six-month period as a presumptively reasonable period of detention to effectuate removal. *Id.* at 701. After that six-month period, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "The six-month period is only a presumption." *Perez Canet*, 2026 WL 1091763, at *3. "The noncitizen may rebut the presumption that continued detention is reasonable where there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "If the noncitizen makes this showing, then the government "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

La Serna has not met his burden to rebut the presumptively reasonable period of detention to effectuate removal. La Serna has not presented evidence that he made a fear-based claim challenging removal to Mexico or that he has a basis to do so. If he does not or cannot assert such a claim, then he "cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with [DHS's] efforts to remove him." *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003); *see also* 8 U.S.C. §§ 1231(a)(1)(C), § 1253(a)(1). Because La Serna has not shown that he has made or has a basis to make a fear-based claim, he has not rebutted the presumptively reasonable period of detention to effectuate his removal. I therefore deny ground six without prejudice.

/ / / /

/ / / /

**V. Conclusion**

I THEREFORE ORDER that petitioner Eddiel Acosta Diaz La Serna's second amended petition **(ECF No. 29) is granted in part**. I deny grounds one and two as moot and deny ground six without prejudice. I grant grounds three, four, and five.

I FURTHER ORDER that by September 10, 2026 the government must provide La Serna with notice of its intent to remove him to Mexico or any other third country. That notice must provide La Serna with written notice of the country being designated and the statutory basis for the designation. The notice also must ask La Serna whether he fears persecution or harm upon removal to the third country, and his response must be memorialized in a writing signed by La Serna.

I FURTHER ORDER that if La Serna expresses a fear of persecution or harm upon removal to the identified third country, then DHS must inform him that he may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration court.

I FURTHER ORDER that if La Serna intends to raise a fear-based claim, he must file a motion to reopen to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT by September 16, 2026.

I FURTHER ORDER that by September 8, 2026, ICE must conduct a custody review under 8 C.F.R. § 241.4 that does not rely on § 1231(a)(1)(C) to deny his release.

DATED this 2nd day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE